UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| NITA S. GRADY-DELGADO, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:12-CV-329 |
| § | |
| WEST GULF MARITIME § | |
| ASSOCIATION, *et al*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

This matter comes before the Court on Defendant International Longshoremen's Association Local #1692's (Local 1692) Motion for Summary Judgment. (D.E. 14). Having considered the motion, Plaintiff's response (D.E. 24), Local 1692's reply (D.E. 25), and the evidence presented to the Court, for the reasons set forth below, the Court **GRANTS** Local 1692's Motion for Summary Judgment.

### I.    BACKGROUND

Plaintiff is an African-American female who was employed for nine years, beginning in 2003, as a clerk at the Port of Corpus Christi for various stevedores, companies that unload and load ships. West Gulf is a non-profit maritime trade association whose members include stevedores. West Gulf negotiates and administers collective bargaining agreements (CBA) on behalf of its stevedore members, coordinates the training of longshore workers, and administers grievance and arbitration proceedings. Local 1692 is a labor union representing longshore clerical workers, such as Plaintiff, who perform work for stevedores who are members of West Gulf. Plaintiff began

1 / 10

obtaining employment through Local 1692 in 2003 and became a union member around 2005 or 2006. It is not necessary to be a member of Local 1692 to obtain work through it. In short, stevedore members of West Gulf employ longshore workers dispatched by Local 1692. Stevedores contact Local 1692 directly with the number of longshore workers needed and Local 1692 calls workers informing them of available positions. After a worker completes a shift, stevedores submit a timesheet to West Gulf to calculate payroll. Workers may be employed by several stevedores during the same pay period. After all stevedores fund payroll, West Gulf issues checks to workers with the pay advice listing each stevedore the worker worked for that week.

In September 2011, Plaintiff complained about Local 1692 operations, specifically the maintenance of financial records, possible mismanagement of funds, and violations of the rule that Local 1692 members cannot serve as union officers while employed as supervisors/Clerks in Charge (CIC) for stevedores.

In February 2012, Local 1692 informed Plaintiff about an available position with stevedore Ports America. Plaintiff was to begin work on February 4th and attended a training meeting on February 3rd. She knew another training meeting was scheduled for 10:00 a.m. on February 4th; however, Plaintiff did not attend because she did not know it was mandatory for all personnel, was not feeling well, and already knew how to perform the duties of the position. When Plaintiff arrived at work at 1:00 p.m. on February 4th, she was told she did not have a job because she failed to attend the morning meeting. Plaintiff was written up by Ports America because she did not show up on time, did not call in, and refused to leave when she was told that she had been replaced. Ports America

requested that Plaintiff not be referred for work at all Ports America operations. (D.E. 18-1).

That evening Plaintiff received a Local 1692 dispatch for a position with Ports America for the next day. Plaintiff accepted the position, but did not report for work because there was a thunderstorm and she was angry about the previous day's events. Plaintiff left a message for Local 1692 dispatch that morning, stating that she would not be reporting for work. However, Plaintiff was again written up by Ports America. The complaint stated, "No call, no show!! 2nd day consecutively!!" Ports America requested that Plaintiff not be referred for work at all Ports America operations. (D.E. 18-2).

On February 5, 2012, Plaintiff wrote to Local 1692's South Atlantic & Gulf Coast District seeking to file a charge of "Misconduct, Dishonesty and Failure to act" against Local 1692. Her complaints were that Local 1692 failed to have 10 members and officers in place, failed to have elections, and union officers were serving as employer supervisors. (D.E. 18-6). She also wrote to West Gulf stating that she wanted to make a charge of discrimination and harassment against her local. She complained that union officers were holding supervisor positions. She stated that on February 4th she had confronted President Brad Steph regarding officers working as supervisors and he became upset. The assistant CIC, who was also the Business Agent for the local, then informed her that she was fired for not attending the 10:00 a.m. training meeting. Plaintiff stated that the meeting was not mandatory. She had attended training on February 3rd and the training on February 4th was for new clerks. Therefore, she was being harassed and retaliated against. (D.E. 18-7).

Local 1692 continued to dispatch Plaintiff to Ports America positions. Plaintiff worked for Ports America on February 6, 7, 8, and 10, 2012. On February 10th Plaintiff was informed that she was fired because she did not attend the February 4th training meeting and because she failed to appear for work on February 5th.

On February 16, 2012, Local 1692 informed Plaintiff of a charge to dismiss her from the union for detrimental conduct which included working for a non-union stevedoring company, filing numerous complaints against Local 1692 with the Department of Labor and Local 1692 headquarters, and for being banned from employment at Ports America. (D.E. 19-14 and D.E. 19-16). A meeting was scheduled for March 1st to address the charge. Plaintiff was notified of the meeting but did not attend. She was then expelled from Local 1692 for "working for a non-union employer in direct competition with ILA jurisdiction." (D.E. 19-18).

On February 28, 2012, Plaintiff filed an unfair labor practices charge with the National Labor Relations Board (NLRB) against Local 1692, claiming that the union breached its duty of representation to its members because officers served as employer supervisors. (D.E. 19-10). The NLRB dismissed this charge on April 23, 2012, because Local 1692 "took action to ensure it was in compliance" with the rule that "individuals serving in dual roles resigned their union positions prior to accepting any subsequent supervisory assignments." (D.E. 19-12). Plaintiff was notified of her right to appeal the decision. (D.E. 19-12).

On March 6, 2012, West Gulf responded to Plaintiff's February 5th complaint, stating that it had found "no conclusive evidence of actionable harassment or

4 / 10

discrimination." (D.E. 18-9). West Gulf outlined its grievance and arbitration procedures, stating that these procedures were a "worker's sole remedy for all claims related to the collective bargaining agreement which explicitly includes any claims of harassment or discrimination." (D.E. 18-9).

On March 13, 2012, Plaintiff was informed of Local 1692's decision to expel her from the union for working for a non-union company. Plaintiff appealed this decision, claiming that the non-union company she worked for was not in competition with Local 1692 and she was retaliated against for speaking out against the former officers for breaching their duties. (D.E. 18-8).

On April 21, 2012, Plaintiff filed EEOC charges of discrimination against Local 1692 and Ports America alleging race discrimination. (D.E. 18-4). Regarding Ports America, she claimed she was fired because she missed a meeting; however, at least two white employees did not attend the meeting and were not fired. She believed that she was discriminated against because of her race and because she opposed union officers working in a supervisory position. (D.E. 18-5).

The EEOC dismissed Plaintiff's charges against Local 1692 and Ports America on July 31, 2012. (D.E. 20-4, D.E. 24-2). Regarding Local 1692, the EEOC found Plaintiff "did not provide any comparators of anyone of a different protected group who was allegedly working for a non-union stevedore and was not terminated." (D.E. 20-4). The EEOC also stated it could not "prove how [Plaintiff's termination] has anything to do with your race, (black). Because you are the only black employee…does not in itself

constitute race discrimination. There is not any evidence to indicate that you were terminated due to your race." (D.E. 20-4).

Plaintiff filed her Complaint in this Court alleging West Gulf and Local 1692 violated Title VII by discriminating against her on the basis of race. (D.E. 1). Local 1692 and West Gulf filed separate motions for summary judgment. At a hearing on October 1, 2013, the Court granted West Gulf's Motion for Summary Judgment (D.E. 21), finding that West Gulf was not Plaintiff's employer, and that Plaintiff had failed to file an EEOC charge against West Gulf and thus had failed to exhaust her remedies. The Court also partially granted Local 1692's Motion for Summary Judgment, finding that Local 1692 was not Plaintiff's employer. The only remaining issue is whether Local 1692 discriminated against Plaintiff in violation of 42 U.S.C. § 2000e-2(c)(1) when it terminated her union membership.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In reaching its decision, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of a material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id*.

The movant has the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett,* 47 U.S. 317, 323 (1986). The moving party bears the burden of identifying those portions of the record he or she believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25. Once a movant makes a properly supported motion, the burden then shifts to the non-movant to show the existence of a genuine fact issue for trial. *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-97 (1986).

The non-movant cannot merely rest on the allegations of the pleadings or on unsubstantiated, subjective beliefs. *Anderson*, 477 U.S. at 248-49. The non-movant must establish there are material, controverted facts precluding summary judgment. *Id*. Additionally, the non-movant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."); *see also Anderson*, 477 U.S. at 249-52. Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Where the non-movant fails to present evidence to support his or her claims,

there can be no genuine issue of material fact because the complete failure of proof on an essential matter for which the non-movant bears the burden of proof renders all other issues immaterial. *Id.* at 323.

### III. ANALYSIS

Title VII contains a provision applicable to labor organizations. Under this provision, a labor organization may not discriminate against any individual on the basis of race. 42 U.S.C. §2000e-2(c). It is "an unlawful employment practice for a labor organization to exclude or to expel from its membership, or otherwise discriminate against, any individual because of his race, color, religion, sex or national origin." 42 U.S.C. §2000e-2(c)(1).

Courts have applied the *McDonnell Douglas* burden-shifting analysis to lawsuits against unions. *Grosskopf v. Potter*, No. SA-05-CA-0836, 2007 WL 2428151, at *8 (W.D. Tex. 2007); *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 882 (9th Cir. 2007); *Nosie v. Ass'n of Flight Attendants*, 722 F. Supp.2d 1181, 1194 (D. Haw. 2010). Under that analysis, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the alleged discriminatory act. If the defendant meets this burden, then the plaintiff must present substantial evidence that the defendant's reason was pretext for unlawful discrimination. If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Adapting the *McDonnell Douglas* criteria to a case against a union, a union member can make a prima facie claim of discrimination by introducing evidence that the member "was singled out and treated less favorably than others similarly situated on account of race . . ." *Beck*, 506 F.3d at 882 (citations omitted).

Plaintiff fails to present a prima facie case of discrimination because she does not address whether she was treated less favorably than any similarly situated union members, i.e. whether any union members who were working for non-union employers in direct competition with the union jurisdiction were allowed to maintain their union membership.

Even assuming Plaintiff could establish a prima facie case, Plaintiff would still have to show that Local 1692s' proffered reason for her termination from the union was a pretext for discrimination. Local 1692 terminated Plaintiff's union membership because she worked for a non-union company, P.C.T. In support of the termination, Local 1692 cites to its members' affidavits; membership rules; letters to Plaintiff regarding the charges against her, notice of a hearing, and the membership termination; and Plaintiff's deposition and affidavit stating that she worked for P.C.T. (D.E. 19 and D.E. 20). To show that she was discriminated against and that the reason offered by Local 1692 for her termination is merely a pretext for discrimination, Plaintiff cites only to her affidavit which the Court finds is impermissibly conclusory. (D.E. 24); *Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902 (5th Cir. 2000) (*citing Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 139 (2000); *see also Anderson*, 477 U.S. at 249-52. Giving full credence to Plaintiff's scant summary judgment evidence, there is

nothing to demonstrate that Local 1692's proffered reason for terminating Plaintiff's membership is mere pretext.

In her affidavit, Plaintiff states she "was made to feel my race was a motivating factor" and "I believe…the defendants were looking for a way to get rid of me because of my race", but she does not offer any additional details or supporting evidence. Plaintiff's response falls short of establishing a genuine issue of material fact. On summary judgment, Plaintiff is required to go beyond her pleadings and offer specific facts demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 324. Plaintiff cannot discharge her burden by offering subjective beliefs, conclusory allegations, and unsubstantiated assertions, as these are insufficient to survive summary judgment. *Celotex*, 477 U.S. at 325; *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

## IV.   CONCLUSION

For the foregoing reasons, Defendant Local 1692's Motion for Summary Judgment (D.E. 14) is GRANTED and this action is DISMISSED WITH PREJUDICE.

ORDERED this 11th day of October, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE